UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
STEPHANIE BELTON,

                            Plaintiff,

                            12-Cv-6346 (JPO)

        -v-

                            OPINION AND ORDER

THE CITY OF NEW YORK and JOHN
MATTINGLY,

                          Defendant.
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

       Plaintiff Stephanie Belton brings multiple claims against Defendants Administration for Children's Services ("ACS"), her former employer, and John Mattingly ("Mattingly"), the Commissioner of ACS at all relevant times. Specifically, Belton asserts denial of a reasonable accommodation for her disability, a hostile work environment, retaliation, defamation, and discrimination based on her race, gender, disability, and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). Defendants move for summary judgment on all claims, pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendants' motion is granted.

I.  **Background**

   A.  **Factual Background**[1]

Belton is a fifty-year-old, American-born woman.  She describes herself as being of "multiracial ancestry" and claims to suffer from sensorineural dysacusis, a severe form of hearing loss.  *See* Compl. ¶ II(E).  She first became employed by the City of New York in 1990, as a provisional caseworker at the Human Resources Administration's (HRA) Special Services for Children.  Belton was moved to ACS—which took over the HRA's child welfare functions—several months after its creation in 1996.  In 2001, she was transferred to ACS's adoption subsidy city review unit.  She ultimately resigned from her position as Child Welfare Specialist at ACS on October 20, 2010.

By all accounts, Belton's employment at ACS was trying.  During her approximately nine years there, Belton was once subject to disciplinary charges and twice directed to report for medical evaluations, in accordance with Section 72 of the New York Civil Service Law, to assess her fitness to perform the duties of her position.  Her first medical examination, which took place on December 15, 2005, was prompted by complaints about twelve separate incidents dating back to February 2002 in which Belton exhibited "increasingly bizarre, inappropriate, hostile, and at times violent" behavior."  (Declaration of Grace D. Kim in Support of

---

[1] Local Civil Rule 56.1(a) requires the moving party on summary judgment to submit a "short and concise statement" describing the material facts of the case.  The party opposing summary judgment must then respond with a statement of facts as to which a genuine issue remains.  Local Civil Rule 56.1(b).  Belton has failed to respond to the Defendants' motion with such a statement, and Defendants urge this Court to deem the facts in their 56.1 Statement admitted as a matter of law.  (Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Reply Memo"), at p. 6.)  Where a non-moving party does not respond to a 56.1 Statement, the court may either rely upon that Statement or elect to "conduct an assiduous review of the record."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. N.Y.C. Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)).  In light of Belton's *pro se* status, this Court has elected to independently review the full record.

Defendants' Motion for Summary Judgment ("Kim Dec."), Ex. H.)  Nonetheless, the consultant psychiatrist who evaluated Belton, Dr. Azariah Eshkenazi, concluded that she "[did] not suffer from any psychiatric condition that might interfere with her ability to continue and perform her duties."  (Kim Dec. Ex. I.)

A separate incident gave rise to disciplinary charges against Belton in 2008.  On June 4 of that year, Belton was served with Charges and Specifications and a Notice of Informal Conference to be held on July 17, 2008.  (Kim Dec. Ex. E.)  The charges stated that, in May 2008, Belton intentionally bumped into two employees as she passed them in the hallway.  (*Id.*)  The informal conference hearing officer sustained the charges and recommended a 10-day suspension.  Following a Step II hearing on September 18, 2008 to review that decision, the Hearing Officer upheld the charges but instead recommended a 15-day suspension without pay.  (Kim Dec. Ex. F.)  On final review, the ACS Commissioner—Defendant Mattingly—rejected the penalty recommendation, and instead imposed a sixty-day suspension without pay for the charges.  (*Id.*)  Belton served that suspension from December 22, 2008 to February 20, 2009.  (Kim Dec. Ex. G.)

Then, on March 18, 2010, Belton was again directed to report for a medical evaluation, in light of concerns that her "mental condition [had] deteriorated to the point that she [was] …unfit to perform the duties of her position."  (Kim Dec. Ex. J.)  The conclusions of this second examination, once again conducted by Dr. Eshkenazi, were starkly different from those of the first.  In his report dated March 24, 2010, Dr. Eshkenazi noted the deterioration of Belton's condition and her increased paranoia and suspicion; diagnosed her with multiple paranoid ideation; and concluded that she was "not able to resume her duties with the City of New York." (Kim Dec. Ex. K.)

On or around March 26, 2010, Defendant ACS notified Belton that it intended to place her on a leave of absence, pursuant to New York Civil Service Law Section 72. (Kim Dec. Ex. L.) Belton objected to the proposed leave and requested a hearing with the New York City Office of Administrative Trials and Hearings ("OATH"). Following an OATH hearing on June 11, 2010, Administrative Law Judge Ingrid Addison found that Belton was "unfit for work" and recommended that she be placed on an involuntary leave of absence. (Kim Dec. Ex. M.) Accordingly, ACS placed Belton on a leave of absence effective August 2, 2010. Belton did not appeal ACS's determination or apply for reinstatement. (Kim Dec. Ex. B., Transcript of Deposition of Stephanie Belton ("Belton Dep."), at 102:23–104:20; 108:10–17.) She resigned from ACS on October 20, 2010.

### B. Belton's Allegations Against the Defendants

Belton's allegations about the Defendants' conduct are numerous and diverse in substance. First, she claims that she was denied a reasonable accommodation for her stated disability. The facts relating to that claim are not in dispute. In the course of her employment with the City of New York,[2] Belton sought—and was provided with—a telephone outfitted with a hearing-aid adaptor. (Kim Dec. Ex. B, Belton Dep. at 55:22–57:10.) In January 2010, however, ACS staff received new phones. (*Id.* at 48:24–25.) As these phones were not equipped with amplifiers, Belton requested a new hearing-aid adaptor. (*Id.* at 48:24–49:11.) ACS did not provide one, but arranged for a technician to work with Belton and test out the new phone. (*Id.* at 58:1–59:7.) In the interim, Belton was advised to continue to use her previous phone. (*Id.* at

---

[2] The Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs. 56.1 Stmt") notes that the adaptor was provided by ACS and that Belton has been using it since 1996. (*Id.* ¶ 9.) However, in her deposition, Belton stated that she received the adaptor from HRA in 1990 or "the 1990s." (Kim Dec. Ex. B, Belton Dep. at 50:10–50:12, 55:24–55:25.)

56:10–12.) That phone did not have a speakerphone, but Belton acknowledges that it was sufficiently functional to allow her to complete her work. (*Id.* at 58:9–11.) She continued to use this phone until her resignation in October 2010. (*Id.* at 55:22–25.) Belton made no other reasonable accommodation requests while at ACS. (*Id.* at 59:17–19.)

Second, Belton alleges that numerous ACS employees subjected her to sexual harassment and discrimination due to her race and stated disability. Specifically, her Complaint claims that both her involuntary leave of absence and sixty-day suspension were motivated by contempt for her race and disability. *See* Compl. ¶ II(E). Further, her Complaint alleges that Defendant Mattingly and ACS supervisors Sidney McSweeney and Jaron Ben-Shalom sexually harassed her. *Id.* McSweeney allegedly harassed her during an elevator ride by "star[ing] at [her] from waist down" and "genuflect[ing] his unwanted knee into [her] rear end." *Id.* at p. 49. The factual allegations of Shalom's harassment are not specified in the Complaint, but in attached documents Belton writes that Shalom "fondled [her] against [her] will." *Id.* Defendant Mattingly, for his part, "settled" his "downcast eyes . . . on [Belton's] abdomen in a disapproving fashion." *Id.* at p. 25.[3] Belton further claims that Defendant Mattingly and the ACS staff engaged in "calumny of [her] racial physiognomy (e.g. Africanized hair)." *Id.* ¶ II(E).

## II.   Procedural Background

Belton filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 28, 2010. The EEOC issued a notice of a right to sue on June

---

[3] Throughout documents attached to her Complaint, Belton makes a number of additional allegations of discrimination about several other employees at ACS. *See, e.g.*, Compl. at p. 11. By failing to respond to these in their motion papers, Defendants appear to take the position that the allegations do not form part of the Complaint. This Court need not resolve the issue, because inclusion of the allegations would not affect the disposition of Belton's claims.

26, 2012.  On August 17, 2012, Belton commenced this action by filing a Complaint with the Pro Se Office of this Court.  Defendants moved for summary judgment on February 18, 2014.

**III.	Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and there is a genuine issue for trial if, considering the record as a whole, a rational trier of fact could find in favor of the non-moving party, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'"  *Id.* (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).  If the movant meets its burden, the burden shifts to the non-moving party to demonstrate that there is, in fact, a genuine issue for trial.  *Santos v. Murdock*, 243 F.3d 681, 683 (2d. Cir. 2001) (per curiam) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).  The court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co.*, 373 F.3d at 244.  A court must not "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact," but neither can it permit the nonmoving party to rely upon "conclusory statements, conjecture, or speculation." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996) (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995)).

### III. Discussion

#### A. Improper Defendant

At the outset, Defendants contend that Belton's claims against ACS merit dismissal because, as a New York City agency, it lacks the capacity to be sued. *See* N.Y.C. Charter Ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). In light of Belton's *pro se* status and her clear intention to assert claims against the City of New York, the Court construes the complaint as asserting claims as such, and directs the Clerk of Court to amend the caption of this action to replace the "City of New York Administration for Children's Services" with the "City of New York." *See* Fed. R. Civ. P. 21. This amendment is without prejudice to any defenses the City of New York may wish to assert.

#### B. Impermissible and Barred Claims

Next, defendants argue—correctly—that Belton's ADA and Title VII claims against Defendant Mattingly warrant dismissal. Individuals are not subject to liability under either Title VII, *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam)), or under the ADA, *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010) (per curiam); *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 354–55 (E.D.N.Y. 2013); *Ivanov v. N.Y.C. Transit Auth.*, No. 13 Civ. 4280(PKC), 2014 WL 2600230 (S.D.N.Y. June 5, 2014). Accordingly, all ADA and Title VII claims against Defendant Mattingly are dismissed.

In addition, Belton's Title VII and ADA claims against the City of New York are time-barred, in part. A plaintiff seeking to bring a claim under Title VII or the ADA must, after filing

a charge with the appropriate state or local agency, file a charge with the EEOC within 300 days of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (ADA). If a plaintiff fails to do so, his or her claims will be properly rejected. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108–09 (2002) (Title VII); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133–34 (2d Cir. 2003) (Title VII); *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 851 (2d Cir. 2013) (summary order) (ADA). Belton filed her charge of discrimination with the EEOC in July 28, 2010. (Kim Dec. Ex. I.) Accordingly, Belton's Title VII and ADA claims as to events that occurred prior to October 1, 2009, including all claims of discrimination based on national origin,[4] are time-barred.

Similarly, a three-year statute of limitations applies to claims under the NYSHRL and NYCHRL. *See* N.Y.C. Admin. Code § 8-502(d) (NYCHRL); *Morrison v. N.Y.C. Police Dep't*, 214 A.D.2d 394, 394–95 (2d Dep't 1995) (NYSHRL). Given that Belton filed her Complaint on August 17, 2012, claims under these statutes that are based on events prior to August 17, 2009 are time-barred.

Finally, a cause of action for defamation is subject to a one-year statute of limitations. *See* CPLR § 215(3); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013). Insofar as Belton is suing in defamation for "Mattingly and ACS staff's calumny of [her] racial physiognomy (e.g. Africanized hair)", as she appears to be, her claim is dismissed as time-barred.

---

[4] Belton, who identifies as "American born," does not make any factual allegations with regard to her national origin claim in her Complaint. She suggested in her deposition that her national origin claim is based on unsuccessful applications for a city scholarship to complete a master's program, but as Defendants observe, these applications were allegedly made in 1995, 1997, and 2005. (Reply Memo, at p. 12 n.6.) Accordingly, Belton's national origin claim is dismissed as untimely.

As Defendants observe, the statutes of limitations preclude all claims save those based on the following events: (1) Defendant ACS's response to Belton's request, in January 2010, for a hearing-aid adaptor; (2) Defendant ACS's March 18, 2010 direction that Belton report for a Section 72 evaluation, and her subsequent involuntary leave of absence; and (3) alleged acts of sexual harassment against Belton that occurred after August 17, 2009.

C.     **Reasonable Accommodation**

Belton's failure-to-accommodate claim is based on Defendant ACS's response to her request for a hearing-aid adaptor for her new telephone in January 2010, described above. To meet her initial burden of establishing a *prima facie* case of discrimination, Belton must show that: (1) she is a person with a disability within the meaning of the ADA; (2) an employer subject to the ADA had notice of her disability; (3) she could perform the essential functions of the job at issue with a reasonable accommodation; and (4) her employer refused to make such accommodations. *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). "A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012). An employer does not, however, "have to provide a disabled individual with the very accommodation he requests or the accommodation of his choice." *Id.*

Here, the *prima facie* case is not met because Defendant ACS did not refuse to provide Belton with a reasonable accommodation. While ACS did not furnish Belton with a hearing-aid adaptor when new telephones were distributed in January 2010, Belton concedes that ACS provided her with a technician to test her new phone and that she was fully capable of performing the duties of her position with her old phone. Although she noted in her deposition

that she "struggled" to use the adaptor attached to her old phone, she also admitted that she never requested repairs on that adaptor. (Kim Dec. Ex. B, Belton Dep. at 56:20–22; 57:5–57:10.) Accordingly, there is no genuine dispute about whether ACS's failure to provide her with a new hearing-aid adaptor constitutes a refusal to make a reasonable accommodation, and Belton's claim fails as a matter of law.

### D. Discrimination based on Referral for a Section 72 Evaluation

Belton contends that her referral for a Section 72 evaluation constitutes discrimination based on race and disability.[5] She brings claims under Title VII, the ADA, NYSHRL, and NYCHRL. The NYSHRL discrimination claims are governed by federal standards of proof and are considered together with the federal claims. *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("We analyze plaintiff's federal and state law discrimination claims together since in other contexts we have applied federal standards of proof to discrimination claims under the state Human Rights Law."); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008) (same).

Title VII and the ADA claims are analyzed under the *McDonnell Douglas* burden-shifting test. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *United States v. Brennan*, 650 F.3d 65, 92–93 (2d Cir. 2011) (Title VII); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (ADA). Under *McDonnell Douglas*, a plaintiff asserting a discrimination claim must establish a *prima facie* case. If he or she does so, "the burden of production then shifts to the employer, who must offer a legitimate, nondiscriminatory reason for its actions." *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997). "If the

---

[5] As noted above, Belton's national origin claim is entirely time-barred.

employer successfully articulates such a reason, the plaintiff has the burden of proving that the proffered reason is merely a pretext for discrimination." *Id.*

To assert a *prima facie* case under Title VII, a plaintiff must demonstrate that: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Brennan*, 650 F.3d at 93.

The *prima facie* case under the ADA similarly requires the plaintiff to make four showings, namely that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Sista*, 445 F.3d at 169 (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)).

Defendants here contend that: (1) Belton has not demonstrated that the Section 72 referral occurred under circumstances giving rise to an inference of discrimination, and in the alternative, (2) Belton has submitted no material facts to show that Defendants' non-discriminatory justifications are merely pretextual.

### 1. Inference of Discrimination

Belton alleges that the decision to refer her for a Section 72 evaluation—and the subsequent leave of absence imposed on her—was motivated by animus toward her race and disability. For example, the Complaint states that her leave of absence was "erroneously based on the Antideaf and racially motivated empirical database limitation." Compl. ¶ II(E). At another point in the Complaint, Belton alleges that Defendant Mattingly "has visible hatred of African Native American women with Africanized hair . . . [s]o his imposition of a mandatory

psychiatric evaluation was his quest to secure a basis for future termination of parental rights." *Id.* at 25.

However, beyond this assertion and other general allegations regarding the Defendants' purported animosity toward her, Belton submits no evidence in support of her discrimination claim. She has failed to substantiate her conclusory judgments about Defendants' behavior with anything more than her "[feelings and perceptions] of being discriminated against," which do not constitute evidence. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (quoting *Fisher v. Vassar Coll.*, 70 F.3d 1420, 1439 (2d Cir. 1995)). A court is not improperly weighing evidence in concluding that statements that "are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Id*. at 452. In short, Belton's speculative allegations, without more, do not give rise to an inference of discrimination.

### 2. Non-Discriminatory Justification

"[O]n all but the rarest of motions for summary judgment, we should simply assume, for purposes of [the] motion only, that plaintiffs have established a prima facie case" of discrimination. *Pellegrino v. Cnty. of Orange*, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004). Here, however, Defendants have also proffered a legitimate, non-discriminatory justification for the Section 72 referral that Belton has not shown to be pretextual.

The psychological referral that forms the basis of Belton's discrimination claim is a discretionary decision by a city employer. *See* N.Y. Civil Service Law § 72 ("When in the judgment of an appointing authority an employee is unable to perform the duties of his or her position by reason of a disability, . . . the appointing authority may require such employee to undergo a medical examination to be conducted by a medical officer."); *Jannsen v. Condo*, 101

F.3d 14, 16 (2d Cir. 1996) (per curiam) ("Section 72 … provides a *discretionary* course of action for employers."). The record is overwhelmingly supportive of Defendants' position that Belton's deteriorating condition since her first medical evaluation in 2005 gave rise to a legitimate concern regarding her fitness to perform her duties. The basis for her 2010 referral were reports of "physically aggressive, belligerent, and paranoid behavior" by Belton, including ten separate incidents involving other ACS employees between May 2007 and March 2010. (Kim Dec. Ex. J.)

      Likewise, there is little reason to believe that the ultimate result of Belton's Section 72 referral—an involuntary leave of absence without pay—was driven by discrimination. Belton's 2010 medical evaluation was conducted by Dr. Eshkenazi, the same psychiatrist who previously cleared her to continue working. Furthermore, Belton subsequently received an OATH hearing presided over by an Administrative Law Judge, at which she was represented by counsel, multiple witnesses testified, and her medical reports examined. That Belton's involuntary leave of absence was affirmed following this hearing renders implausible her argument that the Section 72 referral was motivated by discrimination. *See Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) ("Appellant's termination occurred, therefore, only after a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination. This fact is highly probative of the absence of discriminatory intent in that termination."). Considering the record as a whole, there is no genuine dispute as to whether Belton's Section 72 referral was the product of discrimination.

Summary judgment for the Defendants is therefore granted as to Belton's claims under Title VII, the ADA, NYSHRL, and NYCHRL.[6]

### E.     Retaliation

Belton further argues that her involuntary leave of absence qualifies as retaliation, assumedly in response to her EEOC filing on July 28, 2010.[7]  Whether analyzed under the ADA, Title VII, or NYCHRL, Belton's retaliation claim fails.

Retaliation claims under the ADA and Title VII are subject to the same burden-shifting framework.  *See Noel v. BNY-Mellon Corp.*, 514 F. App'x 9, 10–11 (2d Cir. 2013) (summary order) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).  A plaintiff seeking to establish a *prima facie* case of retaliation must show that: "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Treglia*, 313 F.3d at 719.

---

[6] The bar for proving discrimination is lower under the NYCHRL than it is under federal or state law.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)) ("To prevail on liability, the plaintiff need only show differential treatment—that she is treated 'less well'— because of a discriminatory intent.").  However, "the plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive."  *Id*.  Moreover, even where NYCHRL claims are concerned, summary judgment is appropriate if there is no genuine dispute about a material fact regarding the plaintiff's claim or the defendant's affirmative defense.  *Id.* at 111.  Here, Belton offers no evidence to suggest that Defendants' non-discriminatory justifications are pretextual, and accordingly her NYCHRL claims—like her state and federal claims—warrant summary judgment.

[7] Although Belton's Complaint links the alleged retaliation to the EEOC filing, her Opposition to Defendants' summary judgment motion memo introduces documents sent to the United States Department of Justice, Civil Rights Division, on or about June 2, 2005.  (*See* Reply Affirmation in Support of Motion for an Order Granting Summary Judgment to the Plaintiff, at p. 19.)  Nevertheless, ACS contends that it never knew of such contact, and nothing offered by Belton suggests otherwise.

A plaintiff suing under NYCHRL bears a relatively lighter burden. Specifically, "retaliation 'in any manner' is prohibited, and '[t]he retaliation ... need not result in an ultimate action with respect to employment ... or in a materially adverse change in the terms and conditions of employment.'" *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (quoting N.Y.C. Admin. Code. § 8-107(7)). Still, even under this more lenient standard, a causal connection between the protected activity and the alleged retaliation is still required. *Adams v. City of New York*, 837 F. Supp. 2d 108, 128 (S.D.N.Y. 2011).

Belton has failed to demonstrate this required causal connection. Belton's EEOC complaint was filed on or about July 28, 2010, over four months *after* she was referred for her Section 72 evaluation (Kim Dec. Ex. J.), and six days after the issuance of the OATH hearing's decision recommending that she be placed on a leave of absence (Kim Dec. Ex. M.). In other words, the Section 72 referral cannot constitute retaliation because there is no causal connection between it and any protected activity on Belton's part.

F.   **Hostile Work Environment**

Finally, Belton asserts a hostile work environment claim under Title VII and the NYCHRL. In order to make out a Title VII hostile work environment claim, a plaintiff must show: "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 715 (2d Cir.1996) (quoting *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995)). In assessing whether a plaintiff has met her burden, "courts should examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)). "It is axiomatic that mistreatment at work … is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

As with retaliation, a plaintiff suing for a hostile work environment under the NYCHRL bears a lower burden than she does under federal law. Though the NYCHRL does not "operate as a general civility code," a plaintiff does not need to demonstrate that the treatment was "severe or pervasive." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (1st Dep't 2009) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998)). Defendants are not liable "if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" *Id.* at 41.

Defendants argue that Belton's Title VII hostile work environment claim merits dismissal for failure to exhaust administrative remedies because her EEOC charge of discrimination does not include allegations of sexual harassment by Defendant Mattingly or Ben-Shalom. In the EEOC charge, Belton raises harassment allegations against several of her fellow employees. Compl. at pp. 11-12. While "exhaustion is ordinarily 'an essential element' of a Title VII claim … [c]laims not raised in an EEOC complaint … may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). "A claim is considered reasonably related if the

conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge' that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994)).  Had the EEOC investigated Belton's claims of harassment by fellow ACS employees, Mattingly and Ben Shalom's alleged conduct would undoubtedly have fallen within the scope of that investigation.  Accordingly, Belton's failure to include those allegations in her EEOC charge is not fatal to her harassment claim.

Nevertheless, Belton's allegations of harassment are not sufficiently severe or pervasive to satisfy the Title VII standard.  Even crediting the most serious of her harassment allegations, the incidents purportedly occurred on an isolated basis over many years and fall below the severity threshold developed in this circuit and others.  *See Alfano v. Costello*, 294 F.3d 365, 379 (2d Cir. 2002) (collecting cases).  In short, no reasonable fact-finder could conclude that Belton's workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Summary judgment as to Belton's Title VII hostile work environment claim is therefore granted.

As summary judgment has been granted with respect to Belton's Title VII claim, this Court declines to exercise supplemental jurisdiction over her claims under the NYCHRL.  *See In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (observing that once all federal claims are dismissed, state claims should generally be dismissed as well) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)); *see also Isaacson v. N.Y. Organ Donor Network,* 405 F. App'x 552, 554 (2d Cir. 2011) (summary order) (affirming district

court's refusal to exercise supplemental jurisdiction over pendent state law claims following dismissal of Title VII claims).

IV. **Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Entry 31 and to close this case.

SO ORDERED.

Dated: September 26, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

Copies mailed to Pro Se party by chambers